UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD ZACHARY SMITH,

    Petitioner,

    v.

WARDEN,

    Respondent.

CAUSE NO.: 3:21-CV-83-MGG

OPINION AND ORDER

Donald Zachary Smith, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 20-09-0235) in which he was found guilty of rioting. (ECF 1.) For the reasons stated below, the petition is denied.

The charge against Mr. Smith was initiated on September 21, 2020, when Indiana Department of Correction Investigator T. Dice wrote a conduct report stating as follows:

> On 9/10/2020 at approximately 1:46 pm a signal 7 was called in the phase 2 recreation building. During the disturbance several offenders utilized the pool tables, picnic tables, and fooseball table to block the doors. Offender Smith, Brown[1] 132752 was seen on DVR helping move the pool table in front of the doors.

(ECF 12-1) (errors in original). On September 25, 2020, Mr. Smith was formally notified of the charge. (ECF 12-2.) He pled not guilty and requested a witness statement from fellow inmate Mike Williams, who he said would attest that he "didn't move any

---

[1] As discussed later in the opinion, the conduct report mistakenly listed Mr. Smith's first name as "Brown" rather than "Donald."

tables." He also requested surveillance video and/or photos showing him "participating in a riot."

Prior to the hearing, the hearing officer reviewed the video evidence and summarized it as follows:

> I (A, Goodridge) reviewed the DVR of Offender Smith, Donald #132752 in case MCF-20-09-0235 for rioting on 9-10-2020. When I went to review the DVR I am able to see that Offender Smith along with multiple other offenders are grouping together in a very aggressive manor. I can see that Offender Smith sits on one of the tables while watching . . . whatever one else is doing between the set of doors. Offender Smith then places his hat on the right way and places his altered hood up in his head. I can then see that he walks around for a few. Offender Smith then comes back over to the pool table and starts to push the table on its end. I can then see that multiple offenders come to assist him in place the table against the door.

(Ex. 12-5) (errors in original). A statement was also obtained from inmate Williams pursuant to Mr. Smith's request. He stated: "I observed Mr. Smith standing by a table not participating in any thing [sic] as the camera should show as well." (ECF 1-1 at 5.)

On October 7, 2020, the hearing officer held a hearing on the charge. Mr. Smith made the following statement in his defense: "That's definitely not me. I am handicap [sic]. I can't lift more than five pounds with my right hand." The hearing officer considered this statement, as well as the witness statement from inmate Williams, staff reports, and the video evidence, and found Mr. Smith guilty. He was sanctioned with the loss of 180 days of earned-time credits, temporary placement in restrictive housing, and a demotion in credit-earning class. The hearing report reflects that the hearing officer chose these sanctions due to the seriousness of the offense, the frequency and

2

nature of Mr. Smith's disciplinary infractions, and his attitude and demeanor during the hearing. (ECF 12-4.)

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Smith raises three claims in his petition: (1) he was wrongly identified in the conduct report as "Brown Smith"; (2) the conduct report did not include the names of the other inmates involved in the riot; and (3) he was not provided with a lay advocate.[2] (ECF 1 at 2-3.)

The court understands Mr. Smith's first claim to be challenging the sufficiency of the evidence. To satisfy due process, there must be "some evidence" to support the hearing officer's decision. *Hill*, 472 U.S. at 455. "This is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

---

[2] Mr. Smith was granted until June 7, 2021, to file a traverse in support of his petition. (ECF 11.) That deadline has passed and no traverse was filed.

3

"Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* Prison disciplinary bodies are entitled to resolve conflicts in the stories presented to them, as long as "some evidence" supports the decision. *Johnson v. Finnan*, 467 F.3d 693, 695 (7th Cir. 2006). A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *See Meeks*, 81 F.3d at 721. It is not the province of a federal habeas court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652.

Mr. Smith was found guilty of rioting, which is defined by the IDOC disciplinary code as:

> Encouraging, directing, commanding, coercing, or signaling one (1) or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders, or participating in such a disturbance, or remaining in a group where some members of the group are participating in such a disturbance.

(ECF 12-8.) The video submitted by respondent shows numerous inmates, including Mr. Smith, moving pool tables and lifting them on their ends to block the doors.

Nevertheless, Mr. Smith argues that he could not be found guilty of rioting because the conduct report misstated his first name. The respondent explains that Investigator Tice's reference to inmate "Smith, Brown" in the conduct report was a scrivener's error. However, Mr. Smith was properly identified by first and last name at the top of the conduct report, and there is no dispute that his IDOC number is 132752, which is listed both at the top of the report and in the body of the report.

4

Furthermore, Mr. Smith does not dispute that he was present during this incident; his defense was that he did not actually move any tables. Notwithstanding his denials, there was evidence pointing to his guilt. Specifically, Investigator Tice identified Mr. Smith on the surveillance video joining in a group that was causing a disturbance. He can be seen on the video pushing a pool table against the door with the assistance of other inmates. Even if he did not actually move any tables, he would still be guilty of rioting if he "remain[ed] in a group where some members of the group are participating in . . . a disturbance." The video clearly depicts Mr. Smith sitting and then walking among a group of inmates who were causing a disturbance, and he does not dispute that he engaged in those acts. The hearing officer's guilty finding is supported by some evidence.

To the extent he is complaining that the video was not made available to him, the Seventh Circuit has recognized that disclosing video evidence to inmates entails security risks. *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003). Specifically, the prison has a "bona fide security justification for non-disclosure," because viewing the video "might allow the inmate to learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future." *Jones v. Cross*, 637 F.3d 841, 848-49 (7th Cir. 2011) (citation and internal quotation marks omitted). The court has reviewed the video evidence and concludes that disclosure to Mr. Smith would pose the security risks outlined by the Seventh Circuit. There is also nothing exculpatory on the video, based on this court's review. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).

Mr. Smith next claims that his due process rights were violated because the conduct report did not list the names of the other inmates involved in the riot. There was no obligation to provide this information under *Wolff*, and it appears he is relying on an internal prison policy in making this argument. A violation of internal prison policy does not present a cognizable basis on which to grant him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies and procedures in prison handbook had "no bearing on his right to due process").

Although unclear, he may be claiming that the conduct report did not adequately notify him of the charge. Under *Wolff*, the notice given "should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). Mr. Smith received such notice. He was given significantly more than 24 hours' notice, as he was formally notified of the charge on September 25, 2020, and the hearing was held on October 7, 2020. The conduct report listed the offense with which he was charged and described the factual basis of the charge—namely, his participation in a group disturbance in the recreation building on September 10, 2020, at approximately 1:46 p.m. The conduct report provided all the information he needed to mount a defense. *Northern*, 326 F.3d at 911. He was clearly aware of the facts giving rise to the charge and did in fact mount a defense, obtaining a witness statement from inmate Williams and arguing that he did not move any tables as alleged in the conduct report. He has not demonstrated that there was a flaw in the conduct report, or that any such flaw prejudiced his ability to defend himself. *See Piggie*

6

*v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error analysis applies to prison disciplinary proceeding).

In his final claim, Mr. Smith argues that he was not given a lay advocate even though he requested one.[3] A lay advocate is only required under the Due Process Clause when an inmate is illiterate or the issues are unduly complex. *Wolff*, 418 U.S. at 570; *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). As reflected in his filings, Mr. Smith is not illiterate. To the contrary, he filed a detailed administrative appeal and the present petition, both of which contain cogent arguments challenging the guilty finding. This was not a particularly complex case: The crux of the case was that Mr. Smith was seen on video participating in a riot. He was able to mount a defense, in that he obtained a witness statement from another inmate who was present and argued that he could not have moved any tables due to a problem with his hand. There is no indication that the lack of a lay advocate deprived him of due process.

For these reasons, the court GRANTS the motion to maintain evidence under seal (ECF 13), DENIES the petition (ECF 1), and DIRECTS the clerk to enter judgment in this case.

SO ORDERED this June 28, 2021.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge

---

[3] The record reflects that a lay advocate was in fact appointed for Mr. Smith at the time of screening. (ECF 12-3.) For unknown reasons, the lay advocate did not appear at the hearing.